J-S52013-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MAHARAJI M. HEMINGWAY, | |
| Appellant | No. 1834 WDA 2014 |

Appeal from the Judgment of Sentence June 23, 2014
In the Court of Common Pleas of Clearfield County
Criminal Division at No(s): CP-17-CR-0000043-2009

BEFORE:  SHOGAN, OLSON, and WECHT, JJ.

MEMORANDUM BY SHOGAN, J.:                   **FILED OCTOBER 27, 2015**

Appellant, Maharaji M. Hemingway, appeals from the judgment of sentence entered for his convictions of multiple drug-related offenses after this Court vacated his previous judgment of sentence and remanded for resentencing.  We affirm.

The trial court summarized the protracted procedural history of this case as follows:

> [Appellant] was convicted of twelve charges relating to drug distribution activities occurring between 2005 and 2007.  At the start of 2005[, Appellant] was 2[6] years old, and did not turn 28 until January 30[th], 2006.  Criminal Complaint, CR-000036-08.  [Appellant] has a significant criminal history, including a juvenile record.  On January 8[th], 2009, as a result of a grand jury investigation commencing in 2006, drug related charges were filed against Clearfield County residents Michael Styers and Charles Gearhart as well as [Appellant], from Philadelphia, Pennsylvania.  The Grand Jury determined that Styers was the head of a cocaine distribution network operating

primarily out of his garage/residence in Clearfield, Clearfield County with Gearhart being one of Styers' principal cocaine dealers.[1] [Appellant] was named as Styers' main source of cocaine out of Philadelphia between 2005 and 2007. [Appellant] was alleged to have sold Styers and others cocaine in Philadelphia and in Clearfield County multiple times each month during the duration of their association.

[1] The 26th Statewide Investigating Grand Jury based in Allegheny County, Pennsylvania[,] issued Presentment Number 32 on September 25, 2008.

As a result, a Criminal Complaint was filed against [Appellant] in the above captioned matter on January 16, 2009, charging [Appellant] with various counts of possession with intent to deliver and delivery of controlled substance, criminal conspiracy, criminal use of communication facility, dealing in proceeds of unlawful activity, and corrupt organizations. After lengthy pre-trial proceedings, including an appeal to the Superior Court by the Commonwealth, a consolidated trial for all three defendants was held before the Clearfield County Court of Common Pleas on January 23, 2012 through February 1, 2012.

During the course of this eight day trial, the Commonwealth presented the testimony of twenty-four witnesses who were connected with or participated in the cocaine distribution ring alleged in this case. Of those, at least ten witnesses provided testimony directly regarding [Appellant] and/or his involvement in selling cocaine in Clearfield County. For example, Arianne Brocious testified that she first met [Appellant], known to her as "Bean," through her cousin, Kara Butler, to purchase cocaine. Trial Tr. Day 3 of 8, Test. of Arianne Brocious, 9, Jan. 25, 2012. She testified that she then introduced Styers to [Appellant], and made multiple trips with Styers and/or with Gearhart to Philadelphia to purchase cocaine from [Appellant]. *Id*. at 11. In her testimony, Ms. Brocious estimated that four ounces of cocaine were purchased per trip, with the trips occurring regularly. *Id*. at 11, 13. She testified that she made around or more than fifteen trips with Styers and/or Gearhart, and that they would also make trips without her. *Id*. at 13-14.

Tara Swatsworth (Osborn) testified that she became involved with the use of cocaine in March of 2006, buying from

Richard Smeal and Jacob Pittman. Trial Tr. Day 2 of 8, Test. of Tara Swatsworth, 4-5, Jan. 24, 2012. She first met [Appellant] when he came to her house in Curwensville, Clearfield County, Pennsylvania. *Id*. at 10. She testified that he arrived with a shoebox containing a half full half-gallon bag of loose cocaine. *Id*. at 11-12. Ms. Swatsworth then witnessed [Appellant] give Mr. Pittman ten one-gram bags of cocaine to sell, according to her testimony. *Id*. at 12. She then recalled that Mr. Pittman and herself went around selling the bags and then returned to her residence where they picked up twenty more one-gram bags of cocaine to sell and/or use. *Id*. at 13. She had further contact with [Appellant] through cell phone calls and a trip to Philadelphia, testifying that she took Mr. Smeal along to meet [Appellant] and obtain cocaine. *Id*. at 15-16. Ms. Swatsworth testified that she had sexual intercourse with [Appellant] and was given an "eightball", approximately three grams of cocaine, and Mr. Smeal was fronted approximately an ounce of cocaine by [Appellant]. *Id*. at 17.

Kristen Wilsoncroft testified that she met [Appellant] in approximately 2005 through Styers at her father's residence in Clearfield, and that she then drove [Appellant] back to Philadelphia. Trial Tr. Day 1 of 8, Test. of Kristin Wilsoncroft, 4, 7, 18, Jan. 23, 2012. She apparently became [Appellant's] pseudo-chauffeur, testifying that [Appellant] would call her on his cell phone, she would pick him up in Philadelphia, drive him to Clearfield, and then back home to Philadelphia in exchange for free cocaine. *Id*. 9-14. Ms. Wilsoncroft testified that she made approximately seven such trips with [Appellant] to and from Philadelphia in the spring/summer of 2005. *Id*. at 11. She also testified to having a sexual relationship with [Appellant] over the course of their association. Trial Tr. Day 2 of 8, Test. of Kristin Wilsoncroft, 23, Jan. 24, 2012.

Rick Wilkinson testified that he met [Appellant] in the summer of 2005 on a trip to Philadelphia with B.J. Kifer and his ex-wife, Jodi Wilkinson, where he purchased cocaine from [Appellant]. Trial Tr. Day 4 of 8, Test. of Rick Wilkinson, 20-23, Jan. 26, 2012. According to his testimony, Mr. Wilkinson lent his car to Styers, who used it to make trips to Philadelphia to obtain cocaine from [Appellant] throughout 2005. *Id*. at 23-25. He also testified that [Appellant] came to his (Wilkinson) residence in Clearfield County, and that [Appellant] contacted him in 2006 and wanted him to sell cocaine. *Id*. at 27-29.

Other witnesses who testified to events regarding [Appellant] included Charles Gearhart (through Grand Jury transcript), Brandon Kifer, Joseph Hunter, Danielle Gearhart, Richard Smeal, and Jacob Pitman. The testimony established that [Appellant] was a main supplier of cocaine to Styers and made numerous trips to Clearfield County to sell cocaine, staying in hotel rooms or Tara Swatswor[t]h's house. Testimony was also provided that there were sightings of [Appellant] at the Styers residence, the Wilsoncroft residence, the Wilkinson residence, and the Gearhart residence during this time period. Witnesses testified to purchasing cocaine from [Appellant], being approached to sell for [Appellant], and that [Appellant] was seen in possession of a large amount of loose cocaine. Although many of the witnesses had prior criminal records and were co-conspirators in the drug organization, these matters were fully explored on direct and cross-examination, along with any plea agreements with the Attorney General.

Following deliberations, the jury found [Appellant] guilty on all counts except on the charge of False Imprisonment. Styers and Gearhart were also convicted of multiple drug-related offenses. Sentencing occurred before this Court on May 24, 2012, where all defendants received lengthy periods of state incarceration.

For his role in the crimes, [Appellant] was given an uneven sentence of 17 to 26 years of incarceration. *See* Sentencing Order, CP-17-CR-43-2009 (May 24, 2012). Notably, [Appellant] was sentenced to three to six years of incarceration for count 3, Delivery of a Controlled Substance (10 grams to less than 50 grams/cocaine); seven to ten years of incarceration for count 1, Delivery of a Controlled Substance (100 grams to 1,000 grams/cocaine); and seven to ten years of incarceration for count 2, Delivery of a Controlled Substance (100 grams to 1,000 grams/cocaine). These sentences were imposed consecutively, for a combined sentence of 17 to 26 years of incarceration. The remaining charges (counts 4-12) for which [Appellant] was convicted were imposed concurrently to the sentences for counts 3, 1, and 2. *See* Sentencing Order, CP-17-CR-43-2009 (May 24, 2012).

[Appellant] appealed his conviction and sentence. While his convictions were upheld, his sentence was vacated by the Superior Court and remanded for resentencing. Upon remand,

- 4 -

[Appellant] was resentenced to 17 to 34 years of incarceration. Though this is largely the same sentence as that imposed at his original sentencing, [Appellant] claims that the trial court was vindictive against him for exercising his right to appeal. A review of the record reveals otherwise.

[Appellant's] appeal from the original judgment of sentence challenged, *inter alia*, "the sufficiency of the evidence supporting the application of a mandatory minimum sentence." ***Commonwealth v. Hemingway***, 1664 WDA 2012 (Pa. Super. 2014) (unpublished). The Superior Court of Pennsylvania did not directly address [Appellant's] challenge to the sufficiency of the evidence supporting his sentence but rather, concluded, *sua sponte*, that [Appellant's] sentence was illegal under ***Alleyne v. United States***, 133 S.Ct. 2151, 2156 (2013) because the trial court found the weight of the cocaine by a *preponderance of the evidence* rather than *beyond a reasonable doubt*. ***Commonwealth v. Hemingway***, 1664 WDA 2012 (Pa. Super. 2014) (unpublished). After conviction, the trial court held a hearing to determine the weight of the drugs as required for sentencing purposes pursuant to 18 PA. C. S. § 7508(a)(2). As a result of the weight determination, [Appellant] received mandatory fines collectively in excess of $145,000 and two mandatory sentences, each of seven to ten years. Importantly, the maximum of each of these mandatory sentences was less than twice the minimum sentence. This issue with the maximum sentence on these mandatory sentences is what has caused the difficulty with [Appellant's] resentencing.

At resentencing [on June 18, 2014], the trial court was forced to disregard any evidence concerning the weight of the cocaine in question. Accordingly, when resentencing [Appellant], the trial court set the weight of the controlled substances for each conviction at the lowest guideline amount; less than 2.5 grams. Therefore, [Appellant] was sentenced to 21-42 months for counts 1,2,3,4,5,6,7,9, and 11; and 15 to 30 months for counts 8 and 18 to 36 months for count 12. All sentences were to be run consecutively, except count 12 was to be run concurrent to count 3. ***See*** Sentencing Order, CP-17-CR-43-2009 (June 18, 2014). This resulted in a total sentence with a minimum of 17 years just as his original sentence, but now carried a possible maximum of 34 years of incarceration. These sentences were imposed within the standard sentencing

guideline range. *See* Sentencing Order, CP-17-CR-43-2009 (June 18, 2012); *accord* 204 Pa. Code §§ 303.1 *et seq*.

Trial Court Opinion, 11/3/14, at 1-6 (emphasis in original).

Appellant filed a timely post-sentence motion on June 24, 2014. The trial court held a hearing on September 9, 2014. On October 21, 2014, the trial court denied Appellant's post-sentence motion. This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Did the trial court correctly calculate [Appellant's] prior record score?

2. Did the trial court overcome the presumption of vindictiveness by imposing a harsher sentence of seventeen (17) to thirty-four (34) years after successfully appealing his original sentence of seventeen (17) to twenty-six (26) years?

Appellant's Brief at 10.

In his first issue, Appellant argues that the trial court improperly calculated his prior record score by including a juvenile adjudication that he claims lapsed from such calculation. This Court has long determined that the question regarding whether juvenile adjudications may properly be included in computing prior record scores implicates a discretionary aspect of sentencing and not the legality of one's sentence. *Commonwealth v. Krum*, 533 A.2d 134 (Pa. Super. 1987) (*en banc*); *Commonwealth v. Tilghman*, 531 A.2d 441 (Pa. Super. 1987) (*en banc*). In his second issue, Appellant contends that the trial court acted in a presumptively vindictive

manner at the time of his resentencing. We have concluded that a claim that a sentence imposed by the trial court was "vindictive" also amounts to a challenge to the discretionary aspect of the sentence. *Commonwealth v. Gould*, 912 A.2d 869, 872 (Pa. Super. 2006).

Thus, Appellant's issues each challenge the discretionary aspects of his sentence. Our standard of review is one of abuse of discretion. Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

Where an appellant challenges the discretionary aspects of a sentence, there is no automatic right to appeal, and an appellant's appeal should be considered to be a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 162 (Pa. Super. 2007). As we observed in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

- 7 -

*Id*. at 170 (citing **Commonwealth v. Evans**, 901 A.2d 528 (Pa. Super. 2006)).

Whether particular issues constitute a substantial question about the appropriateness of a sentence is a question to be evaluated on a case-by-case basis. **Commonwealth v. Kenner**, 784 A.2d 808, 811 (Pa. Super. 2001). As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. **Commonwealth v. Malovich**, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. *Id*. "A substantial question will be found where the defendant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." **Commonwealth v. Ventura**, 975 A.2d 1128, 1133 (Pa. Super. 2009) (citations omitted).

Herein, the first three requirements of the four-part test are met: Appellant brought an appropriate appeal, raised both challenges in his post-sentence motion, and included in his appellate brief the necessary separate concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Therefore, we will next determine whether Appellant has raised substantial questions requiring us to review the discretionary aspects of the sentence imposed by the trial court.

In his first issue, Appellant contends that in calculating his prior record score the trial court improperly included a prior juvenile adjudication of burglary, which raised his prior record score from two to four. We have long held that a claim that a trial court's improper consideration of a prior conviction, with a resulting improper prior record score, raises a substantial question that a fundamental norm underlying the sentencing process has been violated. *See Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa. Super. 2003) (holding contention trial court miscalculated prior record score raises a substantial question); *Commonwealth v. Medley*, 725 A.2d 1225, 1228 (Pa. Super. 1999) (finding substantial question was raised where the appellant alleged trial court miscalculated prior record score). Therefore, we will address this issue on appeal.

Again, sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Shugars*, 895 A.2d at 1275. An abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. *Commonwealth v. Provenzano*, 50 A.3d 148, 154 (Pa. Super. 2012) (quoting *Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007)).

In addressing prior juvenile adjudications in calculating a prior record score we turn to the Sentencing Guidelines. We are mindful that the applicable sentencing guidelines are those in effect at the time that the offense was committed. *Commonwealth v. Maneval*, 688 A.2d 1198, 1200 (Pa. Super. 1997). We observe that the 5th Edition of the Sentencing Guidelines became effective June 13, 1997, and were in effect until the 6th Edition of the Sentencing Guidelines became effective June 3, 2005. The 6th Edition of the Sentencing Guidelines was revised, effective December 5, 2008. Therefore, because Appellant's criminal activity was committed over a period from January 2005 through June 2007, we conclude that both the 5th and the 6th Editions of the Sentencing Guidelines were applicable. Coincidentally, both the 5th Edition and the 6th Edition of the Sentencing Guidelines contain the following, identical language pertaining to prior juvenile adjudications in relation to the computation of a prior record score:

**§303.6. Prior Record Score - prior juvenile adjudications.**

(a) Juvenile adjudication criteria. Prior juvenile adjudications are counted in the Prior Record Score when the following criteria are met:

> (1) The juvenile offense occurred on or after the offender's 14th birthday, and

> (2) There was an express finding by the juvenile court that the adjudication was for a felony or one of the Misdemeanor 1 offenses listed in §303.7(a)(4).

(b) Only the most serious juvenile adjudication of each prior disposition is counted in the Prior Record Score. No other prior juvenile adjudication shall be counted in the Prior Record Score.

**(c) Lapsing of juvenile adjudications.** Prior juvenile adjudications for four point offenses listed in §303.7(a)(1) shall always be included in the Prior Record Score, provided the criteria in subsection (a) above are met:

**(1) All other juvenile adjudications not identified above in subsection (a) lapse and shall not be counted in the Prior Record Score if the offender was 28 years of age or older at the time the current offense was committed.**

**(2) Nothing in this section shall prevent the court from considering lapsed prior adjudications at the time of sentencing.**

204 Pa. Code § 303.6 (emphasis added). Hence, pursuant to the emphasized language stated above, juvenile adjudications lapse and shall not be counted in a prior record score for crimes committed when the offender is twenty-eight years of age or older.

Appellant argues that, pursuant to §303.6(c)(1), because he turned twenty-eight years old on January 30, 2006, which was during the time frame encompassing his various offenses, his prior juvenile adjudication of burglary should have lapsed, and the trial court should not have added two points to Appellant's prior record score. Appellant notes that he was over the age of twenty-eight for a significant portion of the period encompassing the crimes, and thus, his juvenile conviction of burglary should not have been included in his prior record score.

The trial court offered the following reasoning for determining that this issue lacked merit:

- 11 -

[Appellant] argues that he was improperly sentenced because his juvenile record should not have been considered in calculating his [prior record score]. [Appellant] maintains that, under the applicable sentencing guidelines, his juvenile record lapsed for sentencing purposes. Therefore, he concludes that his [prior record score] should have been 2 rather than 4, as computed by the trial court. However, all applicable editions of the sentencing guidelines indicate that [Appellant] must be over the age of 28 at the time the crime was committed to avail himself of the juvenile lapsing provision. *See* 204 Pa. Code § 303.6(c)(5th Edition); 204 Pa. Code § 303.6(c)(6th Edition); *see also* 204 Pa. Code § 303.6(c)(6th Edition Revised) (limiting lapsing provision to those defendants who have remained crime free for the previous 10 years).

[Appellant] is not eligible for the lapsing provision of the sentencing guidelines because he was under the age of 28 when the criminal activity for which he was convicted began. *See* Jury Verdict, ***Comm. v. Hemingway***, No. CP-17-CR-43-2009. The record reveals that [Appellant] was merely 26 years old when he began committing the crimes for which he was convicted. Quite clearly, he is not eligible for the lapsing provision under any applicable edition of the sentencing guidelines. Thus, the trial court correctly calculated [Appellant's] prior record score.

Trial Court Opinion, 11/3/14, at 6-7.

Our review of the record reflects support for the trial court's conclusion that the jury determined Appellant's criminal conduct commenced before Appellant turned twenty-eight years-old. Specifically, the jury returned the following verdicts indicating that Appellant's criminal activity began in January 2005, at the time when Appellant was under the age of twenty-eight:

1.  DELIVERY OF CONTROLLED SUBSTANCE:
    Cocaine to Michael Styers
    January 2005 – June 2007        VERDICT <u>Guilty</u>

2. DELIVERY OF CONTROLLED SUBSTANCE:
Cocaine to Charles Gearhart
January 2005 – June 2007          VERDICT <u>Guilty</u>

3. DELIVERY OF CONTROLLED SUBSTANCE:
Cocaine to Brandon Kifer
January 2005 – June 2007          VERDICT <u>Guilty</u>

4. DELIVERY OF CONTROLLED SUBSTANCE:
Cocaine to Joseph Hunter
January 2005 – June 2007          VERDICT <u>Guilty</u>

5. DELIVERY OF CONTROLLED SUBSTANCE:
Cocaine to Richard Smeal
January 2005 – June 2007          VERDICT <u>Guilty</u>

6. DELIVERY OF CONTROLLED SUBSTANCE:
Cocaine to Kristin Wilsoncroft
January 2005 – June 2007          VERDICT <u>Guilty</u>

7. CRIMINAL CONSPIRACY TO COMMIT POSSESSION W/INTENT TO DELIVER AND DELIVERY OF CONTROLLED SUBSTANCE: Cocaine
January 2005 – June 2007          VERDICT <u>Guilty</u>

8. CRIMINAL USE OF COMMUNICATION FACILITY:
January 2005 – June 2007          VERDICT <u>Guilty</u>

9. DEALING IN PROCEEDS OF UNLAWFUL ACTIVITIES:
January 2005 – June 2007          VERDICT <u>Guilty</u>

10. FALSE IMPRISONMENT: Autumn Kifer
Summer 2007                       VERDICT <u>NOT Guilty</u>

11. CORRUPT ORGANIZATIONS:
January 2005 – June 2007          VERDICT <u>Guilty</u>

12. CORRUPT ORGANIZATIONS: Conspiracy with other persons
January 2005 – June 2007          VERDICT <u>Guilty</u>

Verdict Sheet, 2/1/12, at 1-2.

Thus, as the verdict sheet indicates, the jury specifically found that Appellant's criminal activity for each conviction began before Appellant's twenty-eighth birthday, which was January 30, 2006. Accordingly, because the jury returned a verdict indicating that Appellant was under the age of twenty-eight when he began committing the current offenses, we cannot conclude that the trial court abused its discretion by including Appellant's prior juvenile adjudication of burglary when it computed Appellant's prior record score. Hence, Appellant's contrary claim lacks merit.

We next address Appellant's second issue wherein he argues that the trial court engaged in vindictive sentencing upon remand. As previously stated, an issue challenging the length of a sentence citing judicial vindictiveness raises a challenge to the discretionary aspects of sentencing. **_Gould_**, 912 A.2d at 872. This Court has recognized that such claims constitute a substantial question mandating appellate review. **_Commonwealth v. Robinson_**, 931 A.2d 15, 20-21 (Pa. Super. 2007) (*en banc*).

Appellant avers that upon remand, the trial court improperly increased his punishment for his convictions. Appellant observes that his initial aggregate sentence was a term of imprisonment of seventeen to twenty-six years. However, following remand, the trial court sentenced Appellant to an aggregate term of incarceration of seventeen to thirty-four years.

The U.S. Supreme Court considered the issue of increased sentences in a line of cases beginning with **North Carolina v. Pearce**, 395 U.S. 711 (1969), *reversed in part*, **Alabama v. Smith**, 490 U.S. 794 (1989).[1] In **Pearce**, the Court determined that due process concerns are triggered whenever a court sentences a defendant to a higher term of imprisonment after a second trial or some manner of post-sentencing review.[2] The **Pearce** Court stated the following:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such retaliatory motivation on the part of the sentencing judge.
>
> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the

---

[1] The **Smith** Court reversed in part the holding in **Simpson v. Rice**, 395 U.S. 711 (1969), which was a companion case to **Pearce**. However, the rule established in **Pearce** remained unaffected by the decision in **Smith**.

[2] While **Pearce** dealt with an increased sentence following the grant of a new trial, this Court has held that the same rationale applies where the original sentence is vacated and the second sentence is imposed without an additional trial. **Commonwealth v. Greer**, 554 A.2d 980, 987 n.7 (Pa. Super. 1989).

record, so that constitutional legitimacy of the increased sentence may be fully revealed on appeal.

***Pearce***, 395 U.S. at 725-726.

Subsequently, in ***Texas v. McCullough***, 475 U.S. 134 (1986), the United States Supreme Court modified and expanded the ***Pearce*** Court's approach to resentencing and due process and explained that judicial vindictiveness is the retaliation of a sentencing judge against a defendant for having successfully attacked a first conviction. Generally, it is "the judge who has been reversed" who potentially harbors a "motivation to engage in self-vindication." ***Id***. at 139 (citing ***Chaffin v. Stynchcombe***, 412 U.S. 17 (1973)). To ensure the absence of such motivation, the reasons for an enhanced sentence following retrial must affirmatively appear on the record. ***Id***. at 138. The reasons must be based on objective information concerning (1) identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding, or (2) legitimate sentencing concerns, or other new objective information, not previously available to the court. ***Id***.

Where a subsequent sentence imposes a greater penalty than previously was imposed, a presumption of vindictiveness attaches. ***Commonwealth v. Serrano***, 727 A.2d 1168, 1170 (Pa. Super. 1999) (citing ***Commonwealth v. Campion***, 672 A.2d 1328 (Pa. Super. 1996)). Therefore, we first consider whether a presumption of vindictiveness arises in the instant case. Here, Appellant was tried by a jury, convicted, and

sentenced to an aggregate term of incarceration of seventeen to twenty-six years. Appellant then filed a direct appeal, and this Court vacated his judgment of sentence and remanded for resentencing after *sua sponte* determining that the sentence was illegal due to the application of mandatory minimum sentences set forth in 18 Pa.C.S. § 7508(a)(2). Upon remand, the original sentencing judge then presided over Appellant's resentencing hearing and imposed a harsher sentence, that being an aggregate term of incarceration of seventeen to thirty-four years. Based upon these facts, we are left to conclude that a presumption of vindictiveness is present in this matter.

We next consider whether the trial court rebutted the presumption of vindictiveness. As previously stated, the **Pearce** Court held that the presumption was controlling unless the new sentence was based upon "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." **Pearce**, 395 U.S. at 726. Again, in **McCullough**, the Court modified this rule and held that the presumption could also be overcome by other forms of objective information or legitimate sentencing concerns that were not presented to or considered by the trial court at the original sentencing hearing. **McCullough**, 475 U.S. at 138.

In this case, the trial court expressly disavowed any vindictive purpose in resentencing Appellant and stated the following in its written opinion of November 3, 2014:

> Given [Appellant's] role in the cocaine trafficking scheme which underlies this case, a minimum sentence of 17 years of incarceration is entirely appropriate. Further, when resentencing [Appellant] on remand, the trial court was constrained to impose a "balanced" sentence which resulted in [Appellant's] maximum period of incarceration increasing from 26 years to 34 years. This was clearly and objectively the result of application of the Pennsylvania Sentencing Guidelines, and not the result of vindictiveness on the part of the trial court.

Trial Court Opinion, 11/3/14, at 8.

The reasons for Appellant's enhanced maximum sentence following remand affirmatively appear on the record. Those reasons are based upon the legitimate sentencing concerns of imposing a balanced sentence. Thus, we are satisfied that the trial court has rebutted any presumption of vindictiveness that may have attached to its sentence imposed upon remand. Therefore, Appellant's claim that the trial court was vindictive and violated his due process rights by sentencing him to a harsher maximum sentence upon remand fails. Accordingly, Appellant's claim does not warrant relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/27/2015